UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

**Y.S.A.**,

                            Petitioner,

             – against –

**KENNETH GENALO,** in his official capacity
as New York Field Office Director for U.S.
Immigration and Customs Enforcement; **RAUL
MALDONADO, JR.,** in his official capacity as
Warden of the Metropolitan Detention Center,
Brooklyn; **PAM BONDI,** in her official capacity
as Attorney General; **MARKWAYNE
MULLIN,** in his official capacity as Secretary of
Homeland Security; **TODD M. LYONS,** in his
official capacity as Acting Director U.S.
Immigrations and Customs Enforcement,

                         Respondents.

------------------------------------------------------------ X

**MEMORANDUM DECISION
AND ORDER**

26-CV-1557 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On August 9, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested and

detained the petitioner at John F. Kennedy International Airport ("JFK Airport") when he

returned from a family vacation to the Dominican Republic. (ECF No. 1 ¶¶ 1–2; ECF No. 7 at

2.)[1,2]  On November 5, 2025, the petitioner was transferred to the Metropolitan Detention Center

("MDC") in Brooklyn, where he is currently detained. (ECF No. 1 ¶¶ 25–30.)  The petitioner

seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651,

---

[1] Under Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin is
automatically substituted in place of his predecessor, Kristi Noem, as the party to the suit.

[2] The Court granted the petitioner's request to proceed anonymously on March 17, 2026. (ECF Nos. 2,
4.)

and Article I, Section 9, of the Constitution of the United States.  (ECF No. 1 at 2.)  For the reasons that follow, the Court grants the petition for habeas corpus.

**BACKGROUND**[3, 4]

I.      **Factual Background**

     a.      **Arrival in the United States and 2016 Conviction**

In 2005, the petitioner, a Dominican national, entered the United States legally with his mother and two younger siblings to escape poverty and violence.  (ECF No. 1 ¶¶ 19–20; ECF No. 1-2 at 1; ECF No. 1-3 at 1.)  He received a green card through his maternal grandmother, making him a lawful permanent resident.  (ECF No. 1 ¶ 20.)  The family settled in the New York area.  (*Id.*)

On August 26, 2016, the petitioner was arrested for theft in New Jersey.  (ECF No. 10 at 6 (Ex. D, Judgment of Conviction).)  On October 24, 2016, he pled guilty to third degree theft under N.J. Rev. Stat. § 2C:20-3a and was released.  (*Id.*; ECF No. 1 ¶ 23.)  He was sentenced to time served (134 days) and two years' probation on January 6, 2017, which he completed without incident.  (ECF No. 1-4 at 3; ECF No. 1-5; ECF No. 10 at 5–8 (Ex. D, Judgment of Conviction).)  This offense is the petitioner's only criminal conviction.  (ECF No. 1 ¶ 24.)

---

[3] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits.  *See Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *2 n.1 (E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-CV-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025).

[4] Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing.  *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025).

**b.        Arrest at JFK Airport**

In late July 2025, the petitioner went on a 17-day trip to the Dominican Republic. (*Id.* ¶ 25.) He was detained when he arrived at JFK Airport in New York on August 9, 2025, and was held there for five days "without access to basic hygiene such as a shower or dental care." (*Id.* ¶ 26–27.) On August 13, he was issued a Form I-182, Notice to Appear ("NTA"), which stated that he was an "arriving alien" subject to removal from the United States, because he had committed "a crime involving moral turpitude" under 8 U.S.C. § 1182(a)(2)(A)(i)(I). (ECF No. 1-6 at 1.) The government does not identify any other basis for his arrest. (*See* ECF Nos. 7, 10.) ICE transferred the petitioner to the MDC on November 5, 2025. (ECF No. 1 ¶ 30.)

**II.        Procedural History**

The petitioner filed this petition for a writ of habeas corpus on March 16, 2026. (ECF No. 1.) On March 17, 2026, the Court issued an Order to Show Cause directing the government to show cause why a writ of habeas corpus should not be issued. (*ECF Order dated Mar. 17, 2026.*) On March 20, 2026, the government filed its opposition to the petition and response to the Court's Order to Show Cause (ECF No. 7), along with a copy of the NTA (*id.* at 9–13 (Ex. B, Notice to Appear)), a Form I-213, Record of Deportable/Inadmissible Alien (*id.* at 14–17 (Ex. C, Record of Deportable/ Inadmissible Alien), and a form arrest warrant, signed by an immigration officer (*id.* at 7–8 (Ex. A, Warrant for Arrest of Alien)). The petitioner replied on March 23, 2026. (ECF No. 8.) On March 24, 2026, the Court ordered the government to address "the petitioner's due process and statutory arguments that he is entitled to release, as well as his argument that a bond hearing in immigration court would be inadequate to protect his due process rights." (*ECF Order dated Mar. 24, 2026.*) The government responded on March 26, 2026 (ECF No. 10), and the petitioner filed a reply the same day (ECF No. 12), with the Court's leave (*see ECF Order dated Mar. 26,* 2026).

**LEGAL STANDARD**

A petition for a writ of habeas corpus under Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

**DISCUSSION**

In seeking a writ of habeas corpus, the petitioner alleges that his detention violates his procedural due process rights under the Fifth Amendment, as well as Section 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c).[5] (*See* ECF No. 1 ¶¶ 69–92.) Alternatively, the petitioner argues that that the length of his detention violates his procedural and substantive due process rights under the Fifth Amendment. (*See id.* ¶¶ 93–112.)

The government concedes that if the Court applies *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), it will conclude that the petitioner's detention has become "unreasonably prolonged," and that he has a due process right "to a bond hearing with the burden placed on the government to demonstrate by clear and convincing evidence that the detainee is a flight risk or a danger to the community." (ECF No. 7 at 1 (citing *Black*, 203 F.4th at 138, 155).)[6] It further asserts that a

---

[5] The petitioner argued that his detention violates 8 U.S.C. § 1225(b)(2). (ECF No. 1 ¶¶ 69–83.) The government responded that it detained the petitioner pursuant to 8 U.S.C. § 1226(c), not Section 1225(b)(2). (ECF No.7 at 1.) In his subsequent filings, the petitioner asserted that his detention also violated Section 1226(c). (*See* ECF Nos. 8, 12.)

[6] The government maintains that *Black* was wrongly decided, "preserves its objection to *Black*," and "reserves all rights, including its right to appeal." (ECF No. 7 at 1–2.)

bond hearing before an immigration court is the only appropriate remedy, and the petitioner is not entitled to release. (*See* ECF No 7; ECF No. 10.)

## I.     The Petitioner Is Not Subject to 8 U.S.C. § 1226(c)

The question before the Court is whether 8 U.S.C. § 1226(c)(1)(A) applies to the petitioner's detention, as the government asserts. (*See* ECF No .7 at 1.) The answer to that question determines whether the petitioner is or is not subject to mandatory detention pending removal proceedings. Section 1226(c)(1)(A) provides that "[t]he Attorney General shall take into custody" any noncitizen who falls within one of five categories, including "any alien who . . . is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). As relevant here, under Section 1182(a)(2), "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude" is inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i)(I). 8 U.S.C. § 1226(c) "mandates detention pending a decision on whether the alien is to be removed from the United States" and does not require a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018) (quotations and citations omitted).

According to the petitioner, Section 1226(c) applies only to noncitizens at the border who are "seeking admission" into the country. (ECF No. 8 at 8–9; ECF No. 1 ¶¶ 46, 70.) The petitioner argues that he was not "seeking admission" into the United States; rather, he was a lawful permanent resident returning from a brief vacation. (ECF No. 8 at 7–20; ECF No. 1 ¶¶ 46, 70.)[7] Under 8 U.S.C. 1101(13)(C), returning lawful permanent residents "shall not be

---

[7] Although the parties do not address jurisdiction, the INA includes jurisdiction-stripping provisions that bar district court review of challenges to removal, among other things. *See Ozturk v. Hyde*, 136 F.4th 382, 394–402 (2d Cir. 2025). In this action, the petitioner challenges only his detention, not the removal order. (*See* ECF No. 1.) The legal questions about whether the petitioner is removable and whether he is subject to mandatory detention under Section 1226(c) overlap. (*See* ECF No. 12 at 2 n.1 (discussing

regarded as seeking an admission into the United States" unless they fall within six enumerated exceptions. *Lau v. Bondi*, 130 F.4th 42, 47 (2d Cir. 2025). The government responds that under the exceptions in 8 U.S.C. 1101(13)(C), a lawful permanent resident who has committed a crime of moral turpitude may be deemed to be "seeking admission." (ECF No. 10 at 2 (citing *Lau*, 130 F. 4th at 47; 8 U.S.C. 1101(13)(C)(v)).) It asserts that the petitioner's 2016 theft offense was a crime of moral turpitude, and that he was "seeking admission" when he returned from the Dominican Republic; therefore, the government says, he is subject to mandatory detention under Section 1226(c). (ECF No. 10 at 1–2.)

The petitioner's theft conviction was not a crime of moral turpitude. *See Obeya v. Sessions*, 884 F.3d 442, 445–50 (2d Cir. 2018). According to the Second Circuit and Board of Immigration Appeals ("BIA"), moral turpitude is "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Mendez v. Mukasey*, 547 F.3d 345, 347 (2d Cir. 2008) (citation omitted). "Whether a crime is one involving moral turpitude depends on the offender's evil intent or corruption of the mind." *Id.* (citations and quotations omitted). The Second Circuit and BIA apply a "categorical approach" to determine whether a crime meets this definition. *Obeya*, 884 F.4th at 447. In other words, the offense is considered "generically . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Id.* at 447 n.4 (citations and quotations omitted).

that the petitioner's criminal conviction "would not have subjected him to deportability or detention had he never taken a vacation").) But "overlap, even substantial substantive overlap, does not make [a detention] claim arise out of [a challenge to removal], or necessitate that one claim controls the outcome of the other." *Ozturk*, 136 F.4th at 400. The petitioner seeks release from detention, and the Court has jurisdiction to consider constitutional challenges to detention. *Id.*

Until November 16, 2016, when it decided *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847 (B.I.A. 2016), the BIA held that a theft crime involved moral turpitude "only when a *permanent taking* [was] intended." *Obeya*, 884 F.4th at 444 (citations omitted). That changed with *Diaz-Lizarraga*, in which the BIA announced that theft crimes were crimes of moral turpitude if there was "an intent to deprive the owner of his [or her] property *either* permanently *or* under circumstances where the owner's property rights are substantially eroded." *Id.* (quoting *Matter of Obeya*, 26 I. & N. Dec. 856, 859 (B.I.A. 2016); *Diaz-Lizarraga*, 26 I. & N. Dec. at 854). This distinction is significant. The petitioner pled guilty to one count of third-degree theft of movable property under N.J. Rev. Stat. § 2C:20-3a. (ECF No. 1 ¶ 23.) In *Almanzar v. Att'y Gen.*, No. 21-3092, 2023 WL 11833060, (3d Cir. 2024), the Third Circuit considered N.J. Rev. Stat. § 2C:20-3a and found that "a conviction for theft under New Jersey law does not require that a defendant act with the purpose to permanently deprive others of their property, as is necessary for a theft offense to be morally turpitudinous under the BIA's precedent prior to *Matter of Diaz-Lizarraga*." *Almazar*, 2023 WL 11833060, at *3.

The petitioner argues that the Court should apply the rule that was in effect when he pled guilty on October 24, 2016, before the BIA changed the definition of moral turpitude in *Diaz-Lizarraga*. (ECF No. 12 at 1.) The government responds that the Court should use the date of the petitioner's sentencing — January 6, 2017 — or when the judge signed the judgment of conviction — January 11, 2017 (ECF No. 10 at 1), and apply the *Diaz-Lizarraga* rule.

In *Obeya*, the Second Circuit noted that there was "little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." *Obeya*, 884 F.4th at 448 (quoting *INS v. St. Cyr*, 533 U.S. 289, 322 (2001)). "So much so that 'deportation is an integral part — indeed,

sometimes the most important part — of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.'" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010)). The court took the "opportunity to clarify that, when conducting retroactivity analysis in the immigration context, we look to whether it would have been reasonable for a criminal defendant to rely on the immigration rules in effect at the time that he or she entered a guilty plea." *Id.* at 448. The Court concluded that it was "eminently reasonable for Obeya, in entering a guilty plea to a charge of petit larceny, to rely on seven decades of BIA precedent . . . holding that larceny offenses involve moral turpitude only when a permanent taking is intended." *Id.* at 448–49.

According to the government, however, the petitioner's reliance on *Obeya* is "misplaced," and an older case, *Puello v. Bureau of Citizenship & Immigr. Servs.*, 511 F.3d 324 (2d Cir. 2007), controls the outcome of this case. (ECF No. 10 at 1–2.) In *Puello*, the Court addressed a different provision of the INA — 8 U.S.C. § 1101(f)(8) — which states that a noncitizen "who at any time has been convicted of an aggravated felony" cannot establish the "good moral character" required for naturalization. *Puello*, 511 F.3d at 328 (quoting 8 U.S.C. § 1101(f)(8)). Analyzing the phrase "convicted of an aggravated felony," the court concluded in that context that "conviction" "refers to the date on which judgment is entered on the docket, not the date on which a court accepts a guilty plea." *Id.* at 331. In the government's view, the *Diaz-Lizarraga* rule should apply because the judgment of conviction in the petitioner's case was not entered until after *Diaz-Lizarraga* was decided. (ECF No. 10 at 1–2.)

The government's argument is not persuasive. The simple answer is that *Obeya* postdates *Puello*, and to the extent there is tension between the decisions, *Obeya* is the controlling precedent. Furthermore, the Supreme Court held in *Padilla v. Kentucky*, which was

8

decided after *Puello*, that constitutionally competent counsel must inform his or her noncitizen client whether his or her plea carries a risk of deportation. *Padilla*, 559 U.S. at 364 ("[D]eportation is an integral part — indeed, sometimes the most important part — of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes."). Accordingly, other circuits considering the retroactivity of BIA precedent have echoed *Obeya*'s recognition that noncitizens have "distinctively weighty reliance interests" at the time they plead guilty. *Francisco-Lopez v. Att'y Gen.*, 970 F.3d 431, 439 (3d Cir. 2020) ("We take this opportunity to clarify our analysis of the reliance factor as we will consider it in the immigration context. As a general rule, an alien defendant's decisions in a criminal proceeding, especially his or her decisions about whether to plead guilty, implicate distinctively weighty reliance interests."); *Monteon-Carmago v. Barr*, 918 F.3d 423, 530–31 (5th Cir. 2019) ("Criminal defendants may have pleaded guilty of crimes that they rightly thought, based on the Board's prior position, did not constitute CIMTs. . . . Retroactively applying *Diaz-Lizarraga* thus would compromise the familiar [due process] considerations of fair notice, reasonable reliance, and settled expectations." (citation modified)); *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1295 (9th Cir. 2018) (discussing a noncitizen defendant's reliance interests and stating that "we do not doubt that an alien in [the petitioner's] position would rely on the BIA's continual affirmation of the rule of literal deprivation which had existed for decades").

Here, the petitioner pled guilty, like Obeya did, when the BIA was still following "seven decades" of precedent defining moral turpitude. *Obeya*, 884 F.3d at 449. It was "eminently reasonable" for the petitioner to "rely on the immigration rules in effect at the time that he . . .

9

entered a guilty plea," when the theft crime to which he pled guilty was not a crime of moral turpitude.[8] *Id.* at 448.

Since the petitioner did not commit a crime of moral turpitude, he was not "seeking admission" to the United States when he returned from the Dominican Republic. Accordingly, Section 1226(c) does not apply to him. The government has not articulated any other statutory basis for his detention. (*See* ECF Nos. 7, 10.) The only remaining plausible basis under the INA for the petitioner's detention is 8 U.S.C. 1226(a), which provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. 1226(a).[9] Accordingly, the Court addresses whether the government violated the petitioner's due process rights under that section.

---

[8] The court in *Puello* discussed "conviction" in a different context. *Puello* concerned 8 U.S.C. § 1101(f)(8), which refers to a noncitizen "who at any time has been convicted of an aggravated felony." 8 U.S.C. § 1101(f)(8); *Puello*, 511 F.3d at 325. 8 U.S.C. 1101(13)(C)(v) refers to any lawful permanent resident who "has *committed* an offense identified in section 1182(a)(2)," 8 U.S.C. 1101(13)(C)(v) (emphasis added), and Section 1182(a)(2) refers to any noncitizen "convicted of, *or who admits having committed*, or who admits committing acts which constitute the essential elements of" a crime of moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i) (emphasis added). If the government is correct, the Court would have to conclude that "convicted" and "admits having committed" mean the same thing in the same provision, contradicting the "the cardinal rule of statutory interpretation that 'every clause and word of a statute should have meaning.'" *Tumba v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *3 (S.D.N.Y. Nov. 4, 2025) (quoting *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). Thus, to avoid interpreting the statute in a way that produces an absurd result, the Court follows *Obeya*. *See CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018) ("A statute should be interpreted in a way that avoids absurd results." (citation omitted)).

[9] 8 U.S.C. § 1225(b)(2) does not support the petitioner's mandatory detention for the same reason that Section 1226(c) does not justify his detention — the petitioner was not "seeking admission." *See generally Ye v. Maldonado*, 25-CV-6417, 2025 WL 3521298, at 3–6 (E.D.N.Y. Dec. 8, 2025) (discussing Section 1225(b)(2)). Moreover, the petitioner is not subject to mandatory detention under 8 U.S.C. § 1231 because his appeal of his removal order is still pending before the BIA. *See Hechavarria v. Sessions*, 891 F.3d 49, 54–57 (2d Cir. 2018); *Colindres v. Tellez*, 26-CV-663, 2026 WL 509493, at *2 (E.D.N.Y. Feb. 23, 2026).

## II.  Denial of Due Process

### a.  Constitutional Due Process Protections Apply

The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citations omitted).  It is well established that lawful permanent residents returning to the United States from abroad are in a different position from noncitizens seeking initial admission to the United States.  *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").  The Supreme Court has repeatedly explained that "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *Id.* Accordingly, "a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien." *Id.* at 31 (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 600 (1953)).

The petitioner was a permanent resident of over twenty years when he returned from a 17-day vacation in August 2025.  (ECF No. 1 ¶¶ 4, 25.)  He is therefore entitled to due process.[10]

### b.  Due Process Under Section 1226(a)

In this circuit, courts assessing the adequacy of the process afforded in the civil immigration context apply the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See*

---

[10] The government does not dispute that the petitioner is entitled to due process.  (*See* ECF Nos. 7, 10.)

*Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).  Under that test, the Court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

The petitioner asserts that his detention violates due process regardless of its length. (ECF No. 1 ¶¶ 69–83.)  The government does not respond to this argument.  (*See* ECF Nos. 7, 10.)  Nor could it do so persuasively.

The first *Mathews* factor — the private interest affected by the government's action — overwhelmingly favors the petitioner, whose interest is "the most significant liberty interest there is — the interest in being free from imprisonment."  (ECF No. 1 ¶ 73 (quoting *Velasco Lopez*, 978 F.3d at 851; *United States v. Salerno*, 481 U.S. 739, 755 (1987).)  "A person's liberty cannot be abridged without 'adequate procedural protections.'"  *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434, at *8 (E.D.N.Y. Oct. 5, 2025) (quoting *Zadvydas*, 533 U.S. at 690).  The government does not deny that it afforded the petitioner no process before agents arrested him at airport and detained him.  (*See* ECF Nos. 7, 10.)  The first *Mathews* factor thus weighs heavily in the petitioner's favor.

As for the second *Mathews* factor — the value of additional safeguards — the record demonstrates that the government has made no individualized determination to justify detaining the petitioner.  The sole reason in the record, that the petitioner "appears to be inadmissible from the United States under Sec212(a)(2)(A)(i)(I) – Crime (Moral Turpitude)/8 USC 1182(a)" (ECF No. 7 at 17 (Ex. C, Record of Deportable/Inadmissible Alien)), does not justify arresting and

12

holding the petitioner in the MDC, because the petitioner did not commit a crime of moral turpitude. Significantly, the government does not argue that the petitioner is dangerous or a flight risk. (*See id.*; ECF No. 10.) The value of additional safeguards — an individualized hearing before a neutral decisionmaker where the government has the burden of showing that the petitioner's detention is authorized under 8 U.S.C. § 1226(a) and related regulations — thus also weighs heavily in the petitioner's favor.

The third *Mathews* factor is the government's interest in detaining individuals under 8 U.S.C. § 1226(a). Detention is valid if it "advances a legitimate governmental purpose," such as "'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, No. 25-CV-4627, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) (quoting *Zadvydas*, 533 U.S. at 690). As discussed, the government does not argue that the petitioner is a danger to the community or a flight risk, nor could it do so on this record. The petitioner has a single, decade-old criminal offense. He has "deep community ties" in New York, including his lawful permanent resident sister and U.S. citizen brother and their families, and he is the caretaker and financial provider for his mother. (ECF No. 1 ¶¶ 21, 86.) In short, the government does not have a legitimate interest in his detention.

Accordingly, the Court finds that the "ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights." *Valdez*, 2025 WL 1707737, at *4 (citing *Lopez*, 2018 WL 2932726, at *15).

## III.    Scope of Relief

Under 8 U.S.C. § 1226(a), the government denied the petitioner due process when it detained him. The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85

(1973) ("The traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it.").

Here, the constitutional violation the petitioner suffered — the government's failure to conduct any kind of individualized assessment before detaining him, failure to make any flight or risk assessment, and failure to provide him with an opportunity to respond — renders any post-deprivation review by an immigration judge inadequate. That is especially true because "[d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded." *Velasco Lopez*, 978 F.3d at 852.

The government's ongoing detention of the petitioner, in the face of this complete failure of process, entitles him to immediate release. Pending the exhaustion of his appeals related to his removal order, the petitioner will remain free of detention or any other restraint under the immigration laws of the United States to which he was not subject before his arrest on August 9, 2025.

## CONCLUSION

For these reasons, the petitioner's detention without an individualized custody determination violates the INA and the Due Process Clause of the Fifth Amendment, and his petition for a writ of habeas corpus under 28 U.S.C. § 2241, (ECF No. 1), is granted.

The government is directed to release the petitioner from custody within 24 hours of this Order. The government is further directed to return to the petitioner any and all funds and/or property that was seized from the petitioner at the time of arrest. The government is directed to certify compliance with the Court's Order by filing a letter on the docket no later than 11:30 p.m. on April 4, 2026. The Court further orders that the petitioner shall not be re-detained without

14

notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a).  Should the petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within thirty days of this Order.  The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

s/ Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
April 3, 2026